No. 24-10897

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————

JOSIAH COLON; BRANDON KLING; ERIC MELE; WILLIAM MARTIN; and 2ND AMENDMENT ARMORY, a Florida profit Corporation,

*Plaintiffs-Appellees*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN DETTELBACH, in his official capacity as  Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and  MERRICK B. GARLAND, in his official capacity as ATTORNEY GENERAL, U.S. Department of Justice

*Defendants-Appellants*.

———————————————————

## On Appeal from the United States District Court
## for the Middle District of Florida

## BRIEF OF APPELLEES

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellees*

*Colon v. ATF, et al*, Appeal No. 24-10897

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)**

Pursuant to 11th Cir. R. 26.1-1(a), Appellee files this Certificate of Interested Persons and Corporate Disclosure Statement. The following are all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal known to the undersigned:

1. 2nd Amendment Armory, *Plaintiff-Appellee*

2. Bowen, Brigham J., *Attorney for Defendants-Appellants*

3. Boynton, Brian M., *Attorney for Defendants-Appellants*

4. Colon, Josiah, *Plaintiff-Appellee*

5. Dettelbach, Steven M., *Defendant-Appellant*

6. Drezner, Michael, *Attorney for Defendants-Appellants*

7. Garland, Merrick B., *Defendant-Appellant*

8. Janda, Sean R., *Attorney for Defendants-Appellants*

9. Kling, Brandon, *Plaintiff-Appellee*

10. Lewis, Benjamin R., *Attorney for Defendants-Appellants*

11. Larosiere, Matthew, *Attorney for Plaintiffs-Appellees*

12. Lowenstein, Jody D., *Attorney for Defendants-Appellants*

i

13. Lowry, Faith E., *Attorney for Defendants-Appellants*

14. Martin, William, *Plaintiff-Appellee*

15. Mele, Eric, *Plaintiff-Appellee*

16. Pitz, Taylor, *Attorney for Defendants-Appellants*

17. Scriven, Mary S., *District Judge for the Middle District of Florida*

18. Wright, Abby C., *Attorney for Defendants-Appellants*

19. Zermay, Zachary Z., *Attorney for Plaintiffs-Appellees*

No publicly traded company or corporation has an interest in the outcome of this appeal to the undersigned's knowledge.

## STATEMENT REGARDING ORAL ARGUMENT

The district court rightly entered preliminary relief against a rule issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The Rule purported to interpret the National Firearms Act—which attaches criminal consequences to the peaceable possession of ordinary firearms that happen to have short barrels. Rather than explaining considerations bearing on whether a particular firearm is or is not a "rifle," as directed by the statute, the Bureau promulgated a rule with no metrics, no objective hook in statute, while noncompliance bore felony consequences. Given the risk to the rule of law posed by Defendants' overreach, appellees respectfully request this honorable Court hold oral argument on this appeal.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)** ......................................................i

**STATEMENT REGARDING ORAL ARGUMENT** .......................... iii

**TABLE OF CONTENTS** ..................................................................iv

**TABLE OF AUTHORITIES** ........................................................ v

**STATEMENT OF THE ISSUES** ................................................vii

**SUMMARY OF THE ARGUMENTS** ..........................................1

**ARGUMENT** ....................................................................................3

**I.    PLAINTIFFS    ARE    LIKELY    TO    SUCCEED    ON THE MERITS** ...................................................................................3

    **a.    The Final Rule is Not Interpretive**..........................................3

    **b.    The Final Rule is Not a Logical Outgrowth** .........................9

    **c.    Appellant's Prejudice Argument is Unpreserved and Unconvincing** ...............................................................11

**II.    The Balance of Harms and Public Interest Favor Relief** ...15

    **a.    Irreparable Harm** ...............................................................15

    **b.    The Final Rule is Disruptive, Not The Injunction** ............18

**III.    THE INJUNCTION IS NOT OVERBROAD** ...........................18

**CONCLUSION** .............................................................................20

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** .................21

**CERTIFICATE OF SERVICE** .........................................................22

# TABLE OF AUTHORITIES

## Cases

*Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019)...............................4

*Craig v. Boren*, 429 U.S. 190 (1976).........................................................16

*Garland v. Cargill* 602 U.S. ___ (slip op.) (2024)...................................2, 6

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261
  (11th Cir. 2006)..............................................................................16, 17

*Miami-Dade Cnty. v. U.S. E.P.A.*, 529 F.3d 1049
  (11th Cir. 2008).............................................................................11, 13

*Mock v. Garland*, 2023 WL 6457920 (N.D. Tex, 2023)...........................19

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2013)......................................18

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023)........................................3

*National Association for Advancement of Colored People v. United
  States Postal Service*, 496 F.Supp.3d 1 (Dist. D.C., 2020) ..................17

*Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002) ...................................1

*Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92 (2015)............................10

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000)......................................2

*State v. Becerra*, 544 F.Supp. 3d 1241 (M.D. Fla. 2021)....................5, 19

*Warshauer v. Solis*, 577 F.3d 1330 (11th Cir. 2009)................................4

*Young Apartments Inc. v. Town of Jupiter, FL*, 529 F.3d 1027
  (11th Cir. 2008)....................................................................................19

**Statutes**

26 U.S.C. § 5845 ..................................................................................6

26 U.S.C. §5811 .................................................................................5

**Other Authorities**

ffected Parties and their Options Under the Stabilizing Brace Final
    Rule, *atf.gov* .............................................................................8

## STATEMENT OF THE ISSUES

I.    Whether, in an action involving the government's promulgation of a final rule whose factoring criteria contained minimal overlap with the Notice of Proposed Rulemaking ("NPRM"), plaintiffs are likely to succeed on their claim that the complained-of rule was not a logical outgrowth of the NPRM.

II.   Whether the balance of equities in an action where the government threatens Plaintiffs with felony arrest, criminal prosecution, and imprisonment for the peaceable possession of firearms favors preliminary relief; and

III.  Whether an injunction entered by the district court, limited to the parties, was impermissibly overbroad.

## <u>SUMMARY OF THE ARGUMENTS</u>

This is one of a series of cases[1] challenging Appellants' Final Rule,[2] which reversed a decade of administrative guidance and threatened felonious consequences for the continued possession of an unknowable number of millions of firearms. Appellants have filed ostensibly the same brief in every related case in which they have faced a preliminary injunction.[3]

As a preliminary matter, the "grant or denial of a preliminary injunction is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). The government's arguments for elevated proof are misplaced at this stage, as "limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate

---

[1] See *Britto v. ATF*, No. 2:23-cv-19 (N.D. Tex.); *Firearms Regul. Accountability Coal., Inc. v. Garland*, No. 1:23-cv-24 (D.N.D.); *Miller v. Garland*, No. 1:23-cv-195 (E.D. Va.); *Nat'l Rifle Ass'n of Am., Inc. v. ATF*, No. 3:23-cv-1471 (N.D. Tex.); *Second Amend. Found., Inc. v. ATF*, No. 3:21-cv-116 (N.D. Tex.); *Texas v. ATF*, No. 6:23-cv-13 (S.D. Tex.); *Tex. Gun Rts., Inc. v. ATF*, No. 4:23-cv-578 (N.D. Tex.); *Watterson v. ATF*, No. 4:23-cv-80 (E.D. Tex.).

[2] Factoring Criteria for Firearms with Attached "Stabilizing Braces" (the "Final Rule"), 88 Fed. Reg. 6,478 (Jan. 31, 2023).

[3] *See* Doc. 14; *see also* COMBINED REPLY BRIEF FOR APPELLEES in Nos. 23-11199, 23-11203, 23-11204, and 23-40685 and RESPONSE BRIEF FOR APPELLANT in No. 23-11157 (5th Cir., 2024).

1

balancing of the probabilities of ultimate success at the final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000). Appellant's brief does not purport to identify a single abuse of discretion, and it has not articulated flawed legal reasoning as opposed to a factual finding it simply disagrees with.

This case is not about public safety, as the district court properly observed. Dkt. 47 ("the Government suffers no countervailing harm from being prevented from violating [Plaintiffs'] rights.") It is about Defendants' continued, systemic misuse of the administrative process to color outside the lines written by Congress. *See Garland v. Cargill* 602 U.S. ___ *17 (slip op.) (2024) (Appellants, "[a]bandoning the text," similarly sought to expand the definition of "machinegun"). Appellants cannot re-litigate every element of the properly awarded injunctions that were issued here and elsewhere under similar circumstances, as they attempt to do so here. For all the reasons stated by the honorable court below, and *infra*, this court should affirm the lower court.

2

## **ARGUMENT**

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs have established their likelihood of success on the merits with multiple claims, including the logical outgrowth claim that ultimately carried the day in the Fifth Circuit to vacatur of the Final Rule. *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023), not to mention the Second Amendment and Due Process claims. With respect to the questions of fact and law here at issue, Appellees agree with and adopt the analysis of the district court.

Appellants rely fairly heavily by reference to the bump stock rule, and the frequently cited *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019), which upheld a novel interpretation of "machinegun" under the APA. However, *Guedes* is not good law, and the Supreme Court has made it clear in *Cargill* that the government may not take such creative liberties in its re-interpretation of statutes.

### a. The Final Rule is Not Interpretive

At the outset, Appellants assert the rule is Interpretive. Appellants' argument is circular, as it could only be interpretive if it explained

3

something the Act unambiguously required. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1811 (2019). This honorable court's test for interpretive rules states:

> First, although not dispositive, the agency's characterization of the rule is relevant to the determination. Second, an interpretative rule simply states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties. On the other hand, if by its action the agency intends to create new law, rights or duties, the rule is properly considered to be a legislative rule.

*Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009) (cleaned up).

As the district court rightly noted, Appellants fail at the second *Warshauer* factor. While Appellants attempted to shirk the APA in the Final Rule itself by talismanically asserting that the rule was interpretive and lacked the independent force of law, it did so while setting forth a series of specific extra-statutory directives for owners of braced pistols such as Appellees, timelines for compliance, and penalties for the same. *See* Gov. Br. 22 ("this rule merely conveys…more clearly to the public the objective design features and other factors that indicate a weapon is in fact a firearm…under the relevant statutes"); *but see* 88 Fed. Reg. 6553 ("current possessors of these affected firearms have…120

4

days…to take the necessary actions, as described in this rule, to comply…to avoid civil and criminal penalties.").

Far from a reminder of a status quo, the Final Rule purports to supersede all prior "ATF classifications involving 'stabilizing brace' attachments for firearms" as of the Rule's Effective Date. 88 Fed. Reg. 6,478-01 at 6,569. In addition, the Final Rule provided a tax shield to those who comply, which is in direct contravention of the tax *mandate* in the statute the government purports to be clarifying. *See* 26 U.S.C. §5811 ("There **shall** be **levied, collected, and paid** on firearms transferred a tax at the rate of $200 for each firearm[.]). In addition, the future effect and nature of the Final Rule bolsters the necessary finding that the Final Rule is legislative rather than interpretive.

The commands of the Final Rule itself support a finding that it carries the "force or effect of law" in large part because the deadlines and conditions imposed therein are not tentative recommendations or suggested guidelines—they are commandments with the explicit threat of prosecution. *See State v. Becerra*, 544 F.Supp. 3d 1241, 1289 (M.D. Fla. 2021) (the "conditional sailing order serves neither a tentative recommendation nor a suggested guideline…the conditional sailing order

carries the force of law and bears all of the qualities of a legislative rule."). Counsel for Appellants even represented on the record that, after the Enforcement date, no one can own the weapons as they were previously configured without registration and tax. (Dkt. 47 at 28).

Appellants' forceful assertion that their novel, aggressive, and expansive interpretation of the NFA can somehow be blamed on the statutory text was recently struck down by the Supreme Court. *See Cargill*, 602 U.S. at *15-18. While the government attempts to sidestep the significance of its sudden reversal as immaterial, the sudden reversal and rescinding of all prior guidance was relevant in *Cargill*. *Id.* at *5.

Perhaps the argument that the rule is interpretive would be more convincing if the Final Rule had some objective hook in statute. However, Appellee's brief is conspicuously devoid of direct ties between any of the six factors of the Final Rule and the text itself, save for chanting "objective design features" in an attempt to obfuscate its subjectivity. The only objective hooks in statute could be the definitions of "rifle" and "pistol," not "rifle, pistol, and *then some*." *See id.* at *15. The question of whether something is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder" 26 U.S.C. § 5845(c)

6

is quite different from the analysis of "objective design features *and other factors*." 88 Fed. Reg. 6478 (emphasis added), or whether, despite it not being designed and intended to be fired from the shoulder, it "has objective design features and characteristics that facilitate shoulder fire." *Id* at 6494. Nowhere does the statute reference "direct and indirect marketing and promotional materials", nowhere does it reference "sights or a scope," nowhere does it reference "weight or length," and nowhere does it reference "length of pull." 88 Fed. Reg. 6570. The government's position is that the words "designed[], made[], and intended to be fired from the shoulder," mean that if Appellants divine that a pistol is heavy enough, and if it has sights that are hard to use, it is actually a rifle. This simply does not flow.

Despite the government's argument that the command rests in statute, the Final Rule directs specific compliance with **the rule**, not statute. 88 Fed. Reg. 6496 ("The NPRM encouraged anyone…who received a classification prior to the effective date of the final rule to resubmit…to ensure that the classification is consistent with the rule and to avoid any possible criminal or tax penalties"); *id*. at 6549 ("may comply with the options set forth in the rule"); *id*. at 6651 ("comply with the

regulation."); *id.* at 6553 ("take the necessary actions, as described in this rule"); *id.* at 6567 ("with the extent of the impact depending on how they choose to comply after publication of this rule."); *id.* at 6568 ("Some commenters thought that, if the tax is forgiven, more people will comply with the rule.") *see also*, Affected Parties and their Options Under the Stabilizing Brace Final Rule, *atf.gov*, https://www.atf.gov/rules-and-regulations/docs/undefined/stabilizingbracefinalrule-sec508-v2pdf/download.

The government asserts the rule to be interpretive solely to shirk its notice-and-comment obligations. The final rule bears none of the *Warshauer* factors that would alleviate it of these basic safeguards. To hold otherwise would be to accept that the government can avoid notice-and-comment by simply asserting that its legislative rule is interpretive. Compounded with the Fifth Amendment concerns posed by the criminal applications threatened by the Final Rule, this argument cannot stand.

### b. The Final Rule is Not a Logical Outgrowth

Like in *Mock*, Plaintiffs did everything needed to establish a likelihood of success for their logical outgrowth claim. Unlike in *Mock*, though, the district court engaged in a line-by-line comparison between the Final Rule and the NPRM. (Dkt. 47, 29-40). The core issue here is whether the interested parties should have anticipated that such a requirement might be imposed.

To summarize, the NPRM focused almost entirely on its proposed Worksheet 4999 ("the Worksheet") in determining whether a firearm with an attached stabilizing brace was a "rifle." The Worksheet had three stages, and the NPRM analyzed in detail the different factors outlined in the Worksheet, the application of points, passing scores, the interpretation of Worksheet scoring factors, and more. The Final Rule, on the other hand, entirely dispensed with the Worksheet, and focused "on six factors with minimal overlap from the NPRM and no certainty or predictability as to scoring criteria in ATF's analysis," all of which were entirely subjective. *Id.* at 40. As the Fifth Circuit observed, "the Worksheet allowed an individual to analyze his own weapon and gave each individual an objective basis to disagree with the ATF's

9

determinations, the Final Rule vests the ATF with complete discretion to use a subjective balancing test to weigh six opaque factors on an invisible scale." *Mock*, 75 F.4th at 584.

Appellants cite *Perez v. Mortgage Bankers Ass'n* as an endorsement of agencies making fundamental changes in interpretation in interpretative guidance, but that is not supported. 575 U.S. 92 (2015). *Perez* was dealing with a conflation of §§ 2 and 4 of the Act, not an agency attempting to pass off a legislative rule as interpretative.

The government glosses over that two concerning factors in the Final Rule were not presented in the NPRM, specifically that ATF would consider videos, advertisements, and use "in the general community" as evidence of whether or not a firearm is a "rifle" under the NFA. 88 Fed. Reg. at 6479. Where the attention in the NPRM was to physical characteristics of an actual article, and the Final Rule—with no indication as to weight—and in fact indication that *any* factor could be sufficient, devoting two of six factors to the subjective use and opinions of unknown, unknowable third parties, complicates the rulemaking in a series of ways, aside from the obvious departure from the logic of the NPRM.

10

### c. Appellant's Prejudice Argument is Unpreserved and Unconvincing

Appellants contend Plaintiffs did not "demonstrate prejudice from notice-and-commend deficiencies," with displaced reliance on *Miami-Date County*. Gov. Br. 14. As a threshold matter, Appellants' argument that Plaintiffs did not demonstrate prejudice from notice-and-commend deficiencies specifically was never made below, depriving Plaintiffs of the opportunity to prove otherwise.

Even so, Appellants misunderstand the requirements here. Appellants seem to believe that Plaintiffs must have delineated in the complaint all the specific ways Plaintiffs would have responded to each and every procedural failure had the government properly discharged its obligations. That is not what the law requires. Rather, the petitioner must simply indicate "at base" "that on remand, it can mount a credible challenge and was thus prejudiced by the absence of an opportunity to do so before the agency." *Miami-Dade Cnty. v. U.S. E.P.A.*, 529 F.3d 1049, 1061 (11th Cir. 2008) (cleaned up). Contrary to the government's "proposition that plaintiffs would have had to submit additional and different comments." *Mock*, 75 F.4th 586 & n.58 (rejecting this proposition), the substance of Plaintiffs' objections to the Final Rule

11

changes beyond the NPRM are manifest in the record, in no small part because *Plaintiffs are presently suing over them*.[4] Furthermore, in the motion for preliminary injunction, Plaintiffs explained in detail:

> The Final Rule's definition of "rifle" is not a logical outgrowth of the NPRM's definition. The NPRM proposed an "ATF Worksheet 4999" that used a three-part points system to classify a firearm as either a handgun or a rifle. Yet the Final Rule entirely discards Worksheet 4999, replacing it with a vague six-part test. This test was never suggested in the NPRM and is entirely impossible to implement. This is a wholesale change in methodology that a commenter on the NPRM could not have foreseen, and is in no way a "logical outgrowth" thereof. In fact, the approaches in the Final Rule and the NPRM yield conflicting results, which the Final Rule does not acknowledge, much less justify. As one example, under Worksheet 4999 in the Final Rule, a firearm would score "4" points and be considered a SBR if it had a "length of pull" over 13.5 inches, without any other considerations. Yet under the Final Rule, length of pull merely, "in combination with other features–could indicate" an SBR. And as ATF explains, one style of firearm may permissibly have a longer length of pull than another style of firearm. Id. at 6535 (compared to the NPRM, which imposed the same length of pull measurements across-the-board). The Final Rule does not acknowledge, much less justify, these conflicting results.

> ATF admits that the proposed Worksheet 4999, including the points assigned to each criterion was intended to ensure uniform consideration and application but did not achieve these intended purposes. But rather than, as required by the APA, provide notice of and seek comment on the new guidelines that replace the

---

[4] *See* Compl. ¶ 48 (Incorporated into each Count included that the "Final Rule purports to take into account the actions of third parties, which may be entirely unknown to the end user, in determining whether a particular firearm is subject to the NFA, such as use by unknown persons in the  firearms community or in marketing materials")

> proposed worksheet and point system, ATF simply jettisoned any attempt at making the test objective, substituting it with an un-implementable mire of its own unstated, unpromulgated opinion that firearms dealers, manufacturers, and owners like Plaintiffs would be imperiled with divining. In sum, the Final Rule represents a complete and total divergence that those commenting on the NPRM could not have predicted. It is in no way a "logical outgrowth" from the NPRM. By promulgating a requirement that is different in kind than the proposed requirement, the Government did not adequately frame the subjects for discussion and violated the logical outgrowth requirement.

(Dkt. 21 11-12). This case is incredibly distinct from *Miami-Dade County*, upon which the government relies. That case involved a challenge to an EPA rule concerning water treatment. The section relied upon by the government involved the Sierra Club failing to show how it would have mounted a credible challenge to the selection of a particular requirement in water management. *Miami-Date County*, 529 F.3d at 1061. Plaintiffs-Appellees respectfully submit that, while riparian rights are certainly important, the concreteness of prejudice involving wastewater management and well injection requires substantially more demonstration when compared to a situation where "enjoining Defendants' unlawful conduct is the only way to preserve a decades-long status quo based on reasonable reliance, to prevent severe arbitrary enforcement of a novel and aggressive regulatory interpretation that

13

poses exclusively felonious consequences, and prevent the destruction of an unknowably large monetary value of lawfully held, Constitutionally protected firearms and accessories." (Dkt. 21 at 3).

Plaintiffs have clearly demonstrated prejudice from the government's implementation of the Final Rule in that Plaintiffs specifically articulated practical, constitutional, and statutory defects inherent in the departures the Final Rule made from the NPRM. Unlike in *Miami-Dade County*, those very defects are at the core several of Plaintiffs' complaints. Appellants have clearly prejudiced Plaintiffs by forcing these concerns to be brought first in litigation, rather than following the procedures demanded of it through the APA.

## II.    The Balance of Harms and Public Interest Favor Relief

### a. Irreparable Harm

Appellants flatly asserts that no "plaintiff demonstrated any irreparable harm from the Rule," then cites a case for the base proposition that harm must be demonstrated. Gov. Br. 18. The government then complains that Plaintiffs "have not identified their braced firearms"[5] and seems to suggest that Plaintiffs ought have identified their own "best interpretation of the NFA" in order to "substantiate[] any argument that they would not otherwise be subject to the statute's regulatory requirements." Gov. Br. 13-14. This logic is circular and must fail. Its irreparable harm argument boils down to an assertion that regardless of how absurd the government's position is with respect to the meaning of the statute, all harm could be avoided if Plaintiffs simply did what the government demands. This is especially absurd considering the very articles here at issue were repeatedly held by Appellants *not* to constitute short-barreled rifles, through the Appellant Bureau's dozens of classification letters and administrative actions over the course of three administrations.

---

[5] *But see* Compl. at 2-4 (identifying Plaintiffs and their braced firearms).

Next, the government asserts that the district court "did not articulate any theory of irreparable harm at all that it found with respect to the commercial plaintiff." This is patently false. (Dkt. 47 at 19-20) (Recognizing that because commercial plaintiff "sold, and wishes to continue selling the affected products", its possession of which are echoed repeatedly in the record, that the commercial plaintiff's "harm is imminent and is not merely hypothetical.") In fact, the district court identified that the commercial plaintiff "faces direct economic injury through the constriction of its buyer's market, injury amounting to loss of inventory if it complies with the Final Rule, and sanctions for disobeying the Final Rule.") *Id.* (citing *Craig v. Boren*, 429 U.S. 190 (1976)).

Unfortunately for the government, the Eleventh Circuit has stated that "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury" and that the government "has no legitimate interest in enforcing an unconstitutional [statute]." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). The public likewise "has no interest in enforcing an unconstitutional [statute]," and an injunction in that instance "plainly is

not adverse to the public interest." *Id., see also National Association for Advancement of Colored People v. United States Postal Service*, 496 F.Supp.3d 1 (Dist. D.C., 2020) (balance of the equities and the public interest favored targeted preliminary injunction to enjoin Postal Service from implementing policy changes to delivery service). APA violations sound in constitutional principles, and recognize violation of right as a class of independent violation. Even if the affected articles weren't Constitutionally protected arms, the analysis would still mirror *Craig*. As the Supreme Court has recognized in *Bruen*, and was substantially briefed below, there is a substantial protected liberty interest in the continued possession of the affected articles.

Additionally, Appellants reliance on the statute as an absolute fallback is displaced, especially where the underlying action challenges the constitutionality of the regulation of firearms by reference to barrel length. Appellants' argument that the rule does not create imminency, but rather the statute, is confusing where the rule contained specific directives, deadlines, and consequences for continuing to possess "most" of the unknown millions of affected firearms.

17

### b. The Final Rule is Disruptive, Not The Injunction

Relevant both to the harm and injury discussion, the Final Rule itself inflicts the injuries in question by enacting a marked departure from the Agencies' past position about whether the affected arms constitute pistols. *See Mock v. Garland*, 75 F.4th 563, 585-86 (5th Cir. 2013). Appellants here expressly terminated over a decade of guidance and somewhat consistent positions, deeming them "no longer valid as of January 31, 2023." 88 Fed. Reg. at 6480. This was massively disruptive to millions of Americans and businesses who were "in possession of weapon and 'brace' combinations that ATF did not specifically classify in the past as being subject to the NFA." *Id*. If the Final Rule *actually* merely codified an existing understanding, the Final Rule would not have estimated an annualized cost of at least "$266.9 million." *Id*.

### III.   THE INJUNCTION IS NOT OVERBROAD

The government's overbreadth argument appears be focused on the relief provided to the customers of 2nd Amendment Armory, whose standing to represent their interests was separately briefed below and endorsed by the district court. (Dkt. 43). The government again unconvincingly asserts its burden in being prevented from violating the

rights of parties. Plaintiffs asked for nationwide relief, and in the supplemental briefing, and at oral argument, the parties litigated the scope of the injunction. The present and prospective customers of 2nd Amendment Armory were specifically identified and argued for in the alternative to a nationwide injunction. *Id. see also Young Apartments Inc. v. Town of Jupiter, FL*, 529 F.3d 1027, 1041 (11th Cir. 2008) ("One exception to the prudential rule that forbids third-party standing, however, allows businesses to advocate, on behalf of their clients and customers, against discriminatory actions that interfere with that business relationship." (cleaned up)) The parties and customers of 2nd Amendment Armory can "identify themselves if approached by the Defendants and threatened with enforcement." (Dkt. 47 at 50). The injunction is expressly limited to the parties, and not only the parties, but only those within Florida, thus not overbroad. *Texas v. Becerra*, 577 F.Supp. 3d 527 (N.D. Tex, 2021) (limiting vaccine mandate to Texas, despite Texas's request for a nationwide injunction); *cf. Mock v. Garland*, 2023 WL 6457920 (N.D. Tex, 2023) (pistol brace injunction limited to plaintiffs, their families, customers of firearms manufacturers and members of advocacy groups).

19

## **CONCLUSION**

This honorable Court should affirm the grant of preliminary injunction.

Respectfully submitted,

<u>/s/ Matthew Larosiere</u>
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellees*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

The undersigned certifies, pursuant to 11th Cir. Rule 28-1, that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure (32)(a) because it contains 3,936 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements and type style requirements for Rule 32(a) because it has been prepared in a proportionally-based typeface with Microsoft Word 2023 in 14 point, Century Schoolbook font.

<u>/s/ Matthew Larosiere</u>
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellees*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was sent by CM/ECF on June 19, 2024, and notice of this filing was electronically served on all parties there registered for service.

I further certify that four hard copies of the foregoing brief are being furnished to the Clerk of this Court by mail.

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellees*

22