No. 24-10897

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————————

JOSIAH COLON; BRANDON KLING; ERIC MELE; WILLIAM MARTIN; and 2ND
AMENDMENT ARMORY, a Florida profit corporation;

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; DIRECTOR,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; UNITED
STATES DEPARTMENT OF JUSTICE; and U.S. ATTORNEY GENERAL,

Defendants-Appellants.

————————————

On Appeal from the United States District Court
for the Middle District of Florida

————————————

**REPLY BRIEF FOR APPELLANTS**

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

ROGER B. HANDBERG
  *United States Attorney*

ABBY C. WRIGHT
SEAN R. JANDA
BEN LEWIS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7250*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2494*

*Colon v. ATF*, No. 24-10897 (11th Cir.)

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for defendants-appellants certify that, to the best of their knowledge, the following constitutes a complete list of trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal:

2nd Amendment Armory, *Plaintiff-Appellee*

Bowen, Brigham J., *Attorney for Defendants-Appellants*

Boynton, Brian M., *Attorney for Defendants-Appellants*

Colon, Josiah, *Plaintiff-Appellee*

Dettelbach, Steven M., Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Defendant-Appellant*

Drezner, Michael, *Attorney for Defendants-Appellants*

Garland, Merrick B., United States Attorney General, *Defendant-Appellant*

Janda, Sean R., *Attorney for Defendants-Appellants*

Kling, Brandon, *Plaintiff-Appellee*

Larosiere, Matthew, *Attorney for Plaintiffs-Appellees*

Lewis, Benjamin R., *Attorney for Defendants-Appellants*

Lowenstein, Jody D., *Attorney for Defendants-Appellants*

Lowry, Faith E., *Attorney for Defendants-Appellants*

Martin, William, *Plaintiff-Appellee*

*Colon v. ATF*, No. 24-10897 (11ᵗʰ Cir.)

Mele, Eric, *Plaintiff-Appellee*

Pitz, Taylor, *Attorney for Defendants-Appellants*

Scriven, Mary S., *District Judge for the Middle District of Florida*

Wright, Abby C., *Attorney for Defendants-Appellants*

Zermay, Zachary Z., *Attorney for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ............................................................................ 1

ARGUMENT ................................................................................................................. 3

I.    The Rule Did Not Fundamentally Alter ATF's Treatment of Stabilizing
      Braces ................................................................................................................. 3

II.   Plaintiffs Are Unlikely to Succeed on the Merits ........................................... 4

      A.    The Rule Is an Interpretive Rule ............................................................ 4

      B.    The Final Rule Is a Logical Outgrowth of the Proposed Rule ............... 11

      C.    Plaintiffs Have Not Demonstrated the Required Prejudice.................... 14

III.  The Equitable Factors Do Not Support Preliminary Relief.............................. 16

      A.    Plaintiffs Face No Irreparable Harm ........................................................ 16

      B.    The Balance of the Equities Favor Reversal ............................................. 20

IV.   The Injunction is Overbroad.............................................................................. 22

CONCLUSION .............................................................................................................. 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                     **Page(s)**

*American Mining Cong. v. Mine Safety & Health Admin.*,
   995 F.2d 1106 (D.C. Cir. 1993) ............................................................... 7, 9

*American Trucking Ass'n v. United States*,
   688 F.2d 1337 (11th Cir. 1982), *rev'd on other grounds sub nom.*
   *Interstate Commerce Comm'n v. American Trucking Ass'ns*,
   467 U.S. 354 (1984) ......................................................................................... 5

*Arizona v. Biden*,
   40 F.4th 375 (6th Cir. 2022) ........................................................................ 25

*Elrod v. Burns*,
   427 U.S. 347 (1976) ...................................................................................... 19

*FDA v. Alliance for Hippocratic Med.*,
   602 U.S. 367 (2024) ...................................................................................... 24

*Garland v. Cargill*,
   602 U.S. 406 (2024) ........................................................................................ 8

*General Motors Corp. v. Ruckelshaus*,
   742 F.2d 1561 (D.C. Cir. 1984) ................................................................. 6, 9

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ....................................................................... 19

*KH Outdoor, LLC v. City of Trussville*,
   458 F.3d 1261 (11th Cir. 2006) ................................................................... 18

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ...................................................................................... 24

*Miami-Dade County v. U.S. EPA*,
   529 F.3d 1049 (11th Cir. 2008) .................................................... 12, 14, 15

*Morehouse Enters., LLC v. ATF*,
   78 F.4th 1011 (8th Cir. 2023) ..................................................................... 20

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*,
   896 F.2d 1283 (11th Cir. 1990) ................................................................... 20

*Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*,
   494 F.3d 188 (D.C. Cir. 2007) ................................................................... 15

*POET Biorefining, LLC v. EPA,*
  970 F.3d 392 (D.C. Cir. 2020) ......................................................... 7

*Posters 'N' Things, Ltd. v. United States,*
  511 U.S. 513 (1994) ......................................................................... 7

*Siegel v. LePore,*
  234 F.3d 1163 (11th Cir. 2000) ............................................... 17, 18

*Town of Castle Rock v. Gonzales,*
  545 U.S. 748 (2005) .............................................................. 10-11, 11

*United States v. Brown,*
  934 F.3d 1278 (11th Cir. 2019) ..................................................... 16

*United States v. Laines,*
  69 F.4th 1221 (11th Cir. 2023) ....................................................... 8

*United States v. Williams,*
  504 U.S. 36 (1992) ......................................................................... 16

*Warshauer v. Solis,*
  577 F.3d 1330 (11th Cir. 2009) ............................................... 5, 6, 9

**Statutes:**

Administrative Procedure Act (APA),
  5 U.S.C. § 553(b)(A) ........................................................................ 5

National Firearms Act (NFA):
  26 U.S.C. § 5811(a) ....................................................................... 10
  26 U.S.C. § 5845(c) .......................................................................... 5

21 U.S.C. § 841(a) ............................................................................... 8

**Rule:**

Fed. R. Civ. P. 65(a)(1) ...................................................................... 22

**Other Authorities:**

86 Fed. Reg. 30,826 (June 10, 2021) ............................................. 12, 14

88 Fed. Reg. 6478 (Jan. 31, 2023) ................. 1, 3, 4, 7, 9, 10, 11, 13, 14, 15, 21

## INTRODUCTION AND SUMMARY

The district court held that a rule issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) explaining the circumstances when a firearm equipped with rearward attachment called a "stabilizing brace" is a short-barreled rifle, *see* 88 Fed. Reg. 6478 (Jan. 31, 2023) (Rule), suffered from a notice-and-comment defect under the Administrative Procedure Act (APA). The court thus enjoined the government from enforcing the Rule against plaintiffs—several individuals and one commercial retailer of braced firearms—and also against the retailer's past and future customers in Florida.

As the government established in its opening brief, the district court's analysis was erroneous on all levels. The Rule is an interpretive rule: it articulates ATF's best understanding of the statute, which defines a "rifle" to include firearms "designed," "made," and "intended" to be fired from the shoulder. It is therefore not subject to notice-and-comment requirements, and the district court's holding that ATF violated those requirements is misplaced. In any event, ATF employed notice-and-comment procedures, and the proposed rule gave more than adequate notice of the direction that the final rule might take. And even if those procedures were defective, plaintiffs have failed to establish any prejudice from that defect. Beyond that, plaintiffs cannot establish any irreparable harm from the Rule, and the balance of equities and public interest weigh against relief. Finally, even if it were appropriate to give relief to the

parties themselves, the district court erred by extending relief to an unnamed set of past and future customers—and by doing so without notice to the government.

In attempting to rehabilitate the district court's reasoning, plaintiffs simply repeat its errors without engaging with the government's analysis. Perhaps most troublingly, nearly all of plaintiffs' arguments build on an incorrect premise: that the Rule reflects a categorical about-face in ATF's approach to braced firearms. As the Rule and the government's opening brief explained at length, that is simply not true. For years, ATF has classified some braced firearms as short-barreled rifles, but the agency's classification approach had generated inconsistency and confusion. In the Rule, ATF set forth its best understanding of the statute for the benefit of the agency and the regulated public—not to make a categorical shift but to ensure clarity and consistency moving forward.

Beyond that fundamentally incorrect premise, plaintiffs also misunderstand the relevant questions bearing on the analysis. They argue that the Rule is not interpretive because it does not reflect the best interpretation of the statute—but that speaks to the merits of the Rule, not to the threshold question whether it is interpretive. They argue that they can demonstrate prejudice from the asserted logical outgrowth defect because the Rule is different from the proposal—but that speaks to the merits of their logical outgrowth claim, not to the distinct prejudice question. They argue that they have established irreparable harm because the Rule violates the APA—but that speaks to the likelihood of success on the merits, not the irreparable harm analysis. Finally,

they argue that the district court's injunction was proper because the commercial plaintiff has third-party standing to assert the rights of its customers—but that speaks to the question of what claims the commercial plaintiff may assert, not the proper scope of any injunction.

## ARGUMENT

## I.    The Rule Did Not Fundamentally Alter ATF's Treatment of Stabilizing Braces

Much of plaintiffs' response brief claims—often without any citation—that the Rule reversed "a decade of administrative guidance" in which ATF categorically considered firearms equipped with stabilizing braces not to be short-barreled rifles. *See, e.g.*, Response Br. 1, 6, 15, 18. This assertion underpins nearly all of plaintiffs' arguments, on both the merits and equitable factors. But it is not accurate.

As explained in both the government's opening brief and the Rule itself, *see* Opening Br. 8-9, 27-28; 88 Fed. Reg. at 6482-94, ATF has long contemplated that a firearm with a "stabilizing brace for use as a shoulder stock" may be a short-barreled rifle. Opening Br. 8 (quoting 88 Fed. Reg. at 6487). Indeed, ATF previously classified certain stabilizing brace combinations as short-barreled rifles. For example, in July 2020, years before the Rule, ATF classified a firearm equipped with a stabilizing brace as a short-barreled rifle based on objective design factors like rearward "surface area" and "length of pull" as well as marketing practices for other firearms with the same features. 88 Fed. Reg. at 6493.

3

In classification letters issued over a decade, however, ATF was not always consistent in how it determined whether a specific braced firearm was in fact a rifle. Instead, those letters sometimes placed too much "weight on the manufacturer's stated intent," 88 Fed. Reg. at 6502, although later classifications shifted toward placing more weight on considerations like "objective design features," *id.* at 6479. Over time, the agency came to realize that this inconsistency in approach had generated both inconsistent results and confusion among the regulated entities.

For that reason, ATF issued the Rule to clarify how the agency intended to approach applying the statutory definition of "rifle" to braced firearms. But contra plaintiffs' narrative, for the reasons explained, the Rule does not reflect a sudden about-face from classifying all braced firearms as non-rifles to classifying all braced firearms as rifles. Many classification letters issued before the Rule reflected considerations like those also identified in the Rule—and accordingly classified the braced firearm under review as a rifle. And conversely, the Rule does not purport to classify all braced firearms as rifles; instead, the Rule recognizes that some braced designs will not be rifles, *see, e.g.*, 88 Fed. Reg. at 6529, consistent with the previous letters classifying particular firearms not rifles.

## II.    Plaintiffs Are Unlikely to Succeed on the Merits

### A.    The Rule Is an Interpretive Rule

**1.** Plaintiffs are not entitled to a preliminary injunction based on alleged inadequacies in the notice-and-comment process because the Rule is an interpretive

rule that was not required to be issued through such procedures. *See* 5 U.S.C. §

553(b)(A). As explained (Opening Br. 21-25), the "essence of the distinction between

legislative and nonlegislative rules is the power the agency chooses to exercise in

promulgating its rules." *American Trucking Ass'n v. United States*, 688 F.2d 1337, 1343-44

(11th Cir. 1982), *rev'd on other grounds sub nom. Interstate Commerce Comm'n v. American

Trucking Ass'ns*, 467 U.S. 354 (1984). An interpretive rule is "issued by an agency to

advise the public of the agency's construction of the statutes and rules which it

administers." *Warshauer v. Solis*, 577 F.3d 1330, 1338 (11th Cir. 2009) (quotation

omitted). If the rule is "merely interpreting the statute, with the statute remaining the

source of law," then it is an interpretive rule, not a legislative rule. *American Trucking

Ass'n*, 688 F.2d at 1344.

The Rule interprets the National Firearms Act (NFA) by setting out the

considerations that ATF believes bear on whether any particular firearm equipped

with a stabilizing brace is "designed or redesigned, made or remade, and intended to

be fired from the shoulder." 26 U.S.C. § 5845(c). Those considerations express the

agency's understanding of how the qualitative statutory standard applies to specific

circumstances. And as plaintiffs do not contest, the Rule repeatedly makes clear

ATF's intent to interpret the statute rather than impose new obligations. *See* Opening

Br. 22-23 (collecting citations). Thus, in any future enforcement action, the ultimate

question would be whether the particular weapon at issue is a rifle under the statute—

that is, whether it is in fact designed, made, and intended to be fired from the shoulder—and not whether it is a rifle under the Rule.

**2.** In response, plaintiffs do not seriously contest ATF's understanding of the Rule as an interpretation of the statute. Instead, plaintiffs primarily argue that the Rule cannot be interpretive because, in their view, the Rule does not properly reflect the statute. *See* Response Br. 4 (Rule "set[s] forth a series of specific extra-statutory directives"); Response Br. 6 (Rule contains "novel, aggressive, and expansive interpretation" and has no "objective hook in statute"); Response Br. 6-7 (statute does not "reference" the factors discussed in the Rule).

But this line of argument misunderstands the relevant inquiry by confusing the threshold question whether the Rule is interpretive with the merits question whether the Rule reflects the correct interpretation of the statute. As this Court has made clear, the question whether a regulation is interpretive turns on the agency's intent: if ATF did not "intend[] to create new law, rights or duties," *Warshauer*, 577 F.3d at 1337 (quoting *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) (en banc)), the Rule is interpretive. And that is true regardless of whether ATF is correct that the Rule in fact properly reflects the statute. In other words, the Rule is interpretive so long as it can "fairly be viewed as interpreting—even incorrectly"—the

NFA. *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 408 (D.C. Cir. 2020) (quotation omitted).[1]

Moreover, plaintiffs are wrong to suggest that the Rule cannot "fairly be viewed as interpreting" the statute, *POET Biorefining*, 970 F.3d at 408 (quotation omitted), simply because it identifies probative considerations that are not listed in the statute. Of course, an interpretive rule can do more than parrot the language of a statute (a rule would not be very helpful if that is all it did). Instead, an agency can draw "crisper and more detailed lines than the authority being interpreted," setting out even "relatively detailed legal obligations" in a particular context. *Id.* (quoting *American Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993)). So long as the source of those legal obligations is the underlying statute, the agency's crisper articulation of the obligation is interpretive. *See id.*

Nor is it surprising that the individual factors articulated in the Rule are not listed in the statute. The statutory intent-based standard is a holistic standard requiring

---

[1] Plaintiffs' arguments that the Rule contravenes the statute are also meritless on their own terms. As the Rule explains, *see* 88 Fed. Reg. at 6511-13, each "objective design feature[]" outlined in the Rule tends to show that a firearm is designed and intended to be shoulder-fired. For example, as a matter of common sense, "[s]ights or scopes that cannot be used without shouldering" show that a firearm is "designed, made, and intended" to be shoulder-fired. *Id.* at 6512. Likewise, a manufacturer's "marketing materials" and other "information demonstrating the likely use of the weapon by the general community" help verify statements about whether a firearm is designed and intended to be shoulder-fired. *See id.* at 6544-48; *see also Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 521-22 (1994) (explaining that "likely use" of an item is relevant to whether an item is "primarily intended" for that use (quotation omitted)).

consideration of all relevant evidence in a specific case. And it is commonplace for Congress to impose such intent-based standards without delineating specific evidence in the statute—but for courts to nevertheless articulate types of evidence that may generally be probative of intent. Thus, for example, this Court has laid out categories of evidence that will be probative of a criminal defendant's "intent to distribute" controlled substances, such as the possession of a large "quantity of the drug," the possession of "implements such as scales commonly used in distribution," the "lack of paraphernalia used to consume the drug," the "division of drugs into small bags," and the possession of a "large quantity of small-denomination cash." *United States v. Laines*, 69 F.4th 1221, 1230 (11th Cir. 2023) (alteration and quotation omitted). When this Court articulated those factors, it was still engaged in interpreting the relevant criminal prohibition—not making new substantive law—even though the factors do not appear in the statute itself. *Cf.* 21 U.S.C. § 841(a).

Plaintiffs' invocation (at 6) of *Garland v. Cargill*, 602 U.S. 406 (2024), only underscores the point. In that case, the Supreme Court held that ATF's rule interpreting the statutory definition of "machinegun" to include bump stock devices did not reflect the correct interpretation of the statute. *Id.* at 410, 413-14. Even so, no member of the Court suggested that the bump stock rule's failure to properly interpret the statute rendered the rule not interpretive at all.

Beyond that main argument, plaintiffs also emphasize (at 4-6) that the Rule outlined compliance options and explained the agency's decision not to collect the

8

NFA's tax for braced firearms properly registered before May 31, 2023—what plaintiffs refer to as a "tax shield." But the government has already explained the error in this contention, *see* Opening Br. 28: as the Rule makes clear, those provisions announce the agency's exercise of its "enforcement discretion" to forgo enforcing the NFA's obligations against individuals who bring themselves into compliance with the statute—by registering their braced firearms—by the compliance date, 88 Fed. Reg. at 6481. They do not transform an interpretive rule into a legislative one.

It is unsurprising that plaintiffs cite no support for the proposition that the announcement of such an exercise of discretion amounts to a legislative rule that must go through notice and comment. To the contrary, the Executive's exercise of its discretion not to enforce a statutory obligation in particular circumstances does not itself "create new law, rights or duties," *Warshauer*, 577 F.3d at 1337 (quoting *General Motors Corp.*, 742 F.2d at 1565). Thus, the Rule's statements of enforcement discretion reflect quintessential guidance from the agency to affected parties explaining how the agency plans to enforce the underlying statutory duty. *Id.* And although plaintiffs protest (at 5-6) that the Rule expresses "commandments" that carry "the explicit threat of prosecution," plaintiffs nowhere grapple with the reality that it is the underlying statute—the NFA—that contains the relevant mandates, *see American Mining Cong.*, 995 F.2d at 1111. In any enforcement action, noncompliance with the statute—not the Rule—would be required to prove a violation.

No more successful is plaintiffs' reliance (at 7-8) on stray phrases from the Rule that plaintiffs say "direct[] specific compliance with the rule, not statute." Throughout the Rule, ATF repeatedly makes clear that the Rule is intended to help regulated entities "comply with the statutory requirements." 88 Fed. Reg. at 6480; *see id.* at 6553 ("comply with the requirements of the NFA"); *id.* at 6554 ("comply with the statute"); *id.* at 6558 ("comply with Federal law"); *id.* at 6568 ("comply with the statute"). The excerpts of the Rule cited by plaintiffs do not support any other conclusion: they are generally statements by the agency that the public must "take the necessary actions, as described in this rule, to comply with Federal law," meaning the statute, *id.* at 6553; *see id.* at 6567 (explaining that the effect of "this rule's clarification of Federal law" depends in part on how people "choose to comply"), or statements summarizing comments rather than the agency's own views, *see id.* at 6561, 6568.

Similarly, although plaintiffs contend (at 5) that the Rule's choice to forgo collection of a tax for certain braced firearms contravenes the NFA's command that a tax "shall" be collected, 26 U.S.C. § 5811(a), plaintiffs' argument does not help their cause. For one, that argument again confuses the threshold question whether the Rule is interpretive and the merits question whether the Rule accords with the statute. Regardless, plaintiffs are wrong to read the NFA's "shall" language as forbidding the Rule's exercise of enforcement discretion. The Supreme Court has explained that the Executive's "deep-rooted" enforcement discretion persists "even in the presence of seemingly mandatory legislative commands." *Town of Castle Rock v. Gonzales*, 545 U.S.

748, 760-61 (2005). Instead, a "stronger indication" of congressional intent is required before a court should conclude that Congress meant to circumscribe the Executive's inherent discretion whether to take enforcement action. *Id.* at 761. And in any event, plaintiffs have not established standing to challenge the Rule's decision to *forgo* collecting taxes—so even if they were correct that this provision of the Rule is not properly interpretive, they could not leverage that argument into a victory here.

Finally, plaintiffs briefly urge (at 5) that the Rule's supersession of previous classification letters renders the Rule non-interpretive. But the government already explained the error in that argument, *see* Opening Br. 28-29, and plaintiffs make no attempt to engage with the government's counterargument. As the Rule explains, the Rule reflects an interpretation of the NFA that is not wholly consistent with all previous classification letters. *See, e.g.*, 88 Fed. Reg. at 6479-80. There is nothing surprising about ATF's rescission of previous classification letters—which did not themselves go through notice and comment—that do not reflect the Rule's interpretation.

## B.    The Final Rule Is a Logical Outgrowth of the Proposed Rule

**1.** In any event, plaintiffs have not shown that the agency's notice-and-comment process was deficient, because the Final Rule was a logical outgrowth of the proposed rule. As the government has explained, the Final Rule follows from the proposed rule, and any changes made were in character with the original scheme and appropriately responsive to comments made. *See* Opening Br. 29-33. Because

11

commentors had an opportunity to comment on the subjects that the Rule would address, and any changes made to the proposal were "learn[ed] from the comments," *Miami-Dade County v. U.S. EPA*, 529 F.3d 1049, 1059 (11th Cir. 2008) (quotation omitted), plaintiffs have not demonstrated success on a logical-outgrowth claim.

**2.** Nevertheless, plaintiffs contend that the Rule is not a logical outgrowth of the proposal in two specific respects: first, the Rule uses "a subjective balancing test" rather than the worksheet described in the proposal; and second, two of the factors identified in the Rule—a manufacturer's marketing materials and the use of a firearm in the community—were not line items on the proposed worksheet. Response Br. 9-10 (quotation omitted). But the government already explained the errors in both of those contentions, *see* Opening Br. 33-35, and plaintiffs again fail to engage with the government's arguments.

First, contrary to plaintiffs' contention, the Rule's adoption of a multifactor balancing test rather than the proposed point-based worksheet flowed naturally from the proposal and from the statute. The proposal put parties on notice that ATF might adopt the sort of multifactor test reflected in the Rule. Like the Rule, the proposal suggested that ATF would "publish[] the criteria" that the agency would use to evaluate firearms "on a case-by-case basis." 86 Fed. Reg. 30,826, 30,828 (June 10, 2021). And although the proposal contained a complex worksheet, ATF specifically requested comments on "the clarity of th[e] proposed rule and how it may be made easier to understand." *Id.* at 30,849. From that request, commenters were on notice

that ATF might simplify the worksheet into a clearer test—and indeed, several commenters responded that the public found the worksheet to be "confusing and overly complex." 88 Fed. Reg. at 6510. Properly heeding those comments, ATF streamlined the worksheet into a simpler test—but, as explained, *see* Opening Br. 33-34, both the worksheet and the Rule reflect a similar approach and look at similar factors.

Moreover, to the extent that plaintiffs argue that commenters were unaware that the agency might adopt a subjective balancing test, that is belied by the comments received. As explained, *see* Opening Br. 34, commenters criticized the proposed worksheet itself on the ground that it was improperly subjective. And it makes sense that ATF would consider adopting a subjective, totality-of-the-circumstances test— whether articulated through a complicated worksheet or through a streamlined multifactor test—in this context. The statute itself requires an assessment of whether a specific firearm was designed and intended to be fired from the shoulder, and such a holistic intent-based inquiry is generally assessed in a qualitative way—not through precise, objective metrics. *Cf. supra* p. 8 (explaining the holistic inquiry to determine whether a party intended to distribute a controlled substance).

Second, plaintiffs also do not persuade in arguing that commentors could not specifically predict that the Rule would consider the manufacturer's "marketing materials" or the firearm's "likely use in the general community." *See* Response. Br. 10. As explained, *see* Opening Br. 34-35, although not specifically listed on the

proposed worksheet, the proposed rule made clear that the agency would consider—"regardless of the points accrued" on the worksheet—any "efforts to advertise" firearms as "short-barreled rifles," 86 Fed. Reg. at 30,834, and the "likely use" of a firearm, *id.* at 30,828. The Final Rule thus drew these considerations directly from the proposed rule. *See* 88 Fed. Reg. at 6512. Nor is it surprising that the agency might consider commonplace—and clearly probative—indicia of design and intent like marketing materials and likely use.

### C.    Plaintiffs Have Not Demonstrated the Required Prejudice

**1.** Even if there were deficiencies in the notice-and-comment process for the Rule, plaintiffs have not demonstrated any prejudice from those asserted deficiencies. *See* Opening Br. 35-37. As plaintiffs do not meaningfully contest, they must establish prejudice to be entitled to relief under the APA. In this context, that means they "'must indicate with reasonable specificity,' the aspect of the rule to which [they] object[] and 'how [they] might have responded if given the opportunity.'" *Miami-Dade County*, 529 F.3d at 1061.

In attempting to demonstrate the requisite prejudice, plaintiffs primarily include (at 12-13) a lengthy block quotation from their moving papers criticizing the changes made between the proposal and the Rule. But that quotation misses the point: to demonstrate prejudice, plaintiffs do not merely need to show that the Rule "represents a complete and total divergence" that they "could not have predicted." Response Br. 13 (quotation omitted). Instead, that is the merits showing required to

14

make out a logical outgrowth claim. To additionally demonstrate prejudice, plaintiffs need to "indicate with reasonable specificity" how they might have commented differently if they had been on notice of the changes being made between the proposal and the Rule. *Miami-Dade County*, 529 F.3d at 1061 (quoting *Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*, 494 F.3d 188, 202 (D.C. Cir. 2007)). And besides some stray statements that the Rule is "vague" and "impossible to implement," nothing in plaintiffs' block quotation addresses prejudice. Response Br. 12 (quotation omitted). Regardless, the agency considered and thoroughly rejected criticisms relating to vagueness and implementation, *see* 88 Fed. Reg. at 6551-52, and plaintiffs cannot demonstrate that they would have mounted some different challenge through their own comments had proper notice been provided.

Separately, plaintiffs briefly reference (at 14) the other "practical, constitutional, and statutory defects" they have identified with the Rule as evidence of prejudice. This reference fails to properly "indicate with reasonable specificity" the comments they have might submitted if they had been on notice of any changes. *Miami-Dade County*, 529 F.3d at 1061 (quoting *Owner-Operation Indep. Drivers Ass'n*, 494 F.3d at 202). Finally, plaintiffs' argument (at 13-14) that this Court should apply a relaxed version of the prejudice analysis rather than the framework articulated in *Miami-Dade County*— seemingly because they view the interests affected by this Rule as more important than the interests at issue in that case—has no basis in the APA.

15

**2.** Unable to satisfy the APA's prejudice requirement, plaintiffs object (at 11) that the government has forfeited any argument that they must demonstrate prejudice. That objection is doubly wrong. First, the district court itself addressed the prejudice requirement, concluding that plaintiffs could show prejudice. *See* Dkt. No. 47, at 41. And this Court properly considers not only issues that were "pressed" but also issues that were "passed upon below." *United States v. Williams*, 504 U.S. 36, 41 (1992) (quotation omitted). Because the district court passed upon the question of prejudice, this Court too may properly consider that question. Second, and regardless, parties do not forfeit "individual arguments"; instead, they may forfeit only "positions and issues." *United States v. Brown*, 934 F.3d 1278, 1307 (11th Cir. 2019) (quotation omitted). As plaintiffs do not dispute, the government vigorously contested plaintiffs' claim that they are entitled to relief on the basis that the Rule is not a logical outgrowth of the proposal. *See* Dkt. No. 26, at 6; Dkt. No. 22, at 24-28. The government has thus "preserved the specific ground for review" here—whether plaintiffs are entitled to a preliminary injunction on their logical outgrowth claim— and may now "offer new arguments to support that position." *Brown*, 934 F.3d at 1307.

## III.   The Equitable Factors Do Not Support Preliminary Relief

### A.      Plaintiffs Face No Irreparable Harm

**1.** Even putting the merits aside, plaintiffs have not demonstrated that the Rule will cause them any irreparable harm. This is so for two independent reasons, as

16

explained in the government's opening brief. First, plaintiffs have not shown that the Rule itself has caused any change to the legal status of their braced firearms. At least some braced firearms are plainly designed and intended to be fired from the shoulder, *see* Opening Br. 2, 8, and are thus rifles under the NFA; as explained, *see supra* pp. 3-4, long before the Rule, ATF classified some braced firearms as short-barreled rifles. Because plaintiffs have not identified their specific braced firearms, or developed any argument for why those firearms are not short-barreled rifles under the best interpretation of the NFA (or even under ATF's pre-Rule approach), plaintiffs cannot demonstrate that the Rule itself causes them any injury. *See* Opening Br. 37-38.

Second, even assuming that the Rule marks a new application of the NFA's requirements to plaintiffs' braced firearms, plaintiffs have not demonstrated any irreparable harm from the need to comply with those requirements. The NFA's regulatory requirements are relatively modest; the statute imposes simple registration, approval, and marking requirements on covered firearms. Nothing about those minor regulatory requirements constitutes the sort of "serious harm" required to sustain a preliminary injunction. *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000) (per curiam). And although the statute also imposes a $200 tax on the making or transfer of a covered firearm, that tax is recoverable through a refund suit and is thus not irreparable. *See* Opening Br. 38-41. Beyond that, as explained, the commercial plaintiff in particular failed to adduce any evidence of economic harm or other irreparable

17

injury from the Rule—and the district court, in issuing a preliminary injunction, did not articulate any theory of harm at all for that plaintiff. *See* Opening Br. 41-42.

**2.** In response, plaintiffs barely contest the relevant points. As an initial matter, plaintiffs baldly assert—citing their complaint—that they have identified "their braced firearms." Response Br. 15 (quotation omitted). But the cited pages of the complaint simply state that each individual plaintiff owns, and the commercial plaintiff sells, firearms with stabilizing braces; they do not identify the specific braces (or brace-and-pistol combinations) each plaintiff owns or sells. *See* Dkt. No. 1, at 2-4. And no plaintiff identifies any specific previous classification letters applicable to their (unspecified) braced firearms. Without that additional information, plaintiffs continue to be unable to demonstrate that the Rule is the source of their claimed injuries, because it may well be the case that ATF would have classified their specific braced firearms as rifles even before (or without) the Rule.

Second, the individual plaintiffs do not articulate any theory of economic or cost-based injury from the need to comply with the NFA's requirements. *See* Response Br. 15-16. And they do not contest that the statute imposes only minor regulatory burdens that do not qualify as irreparable. Instead, plaintiffs argue (at 16-17) that the Rule will cause them irreparable injury because it violates plaintiffs' constitutional rights. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Even assuming that this principle extends beyond the First Amendment, *but see Siegel*, 234 F.3d at 1177, plaintiffs have not developed any

18

argument in this Court that the Rule violates their Second Amendment rights. They have thus forfeited any right to claim irreparable harm on that basis at this stage of the case.

Similarly, plaintiffs' stray assertions (at 17) that "APA violations sound in constitutional principles" and that plaintiffs have a "substantial protected liberty interest in the continued possession" of firearms are baseless. For one, plaintiffs cite no authority to support the argument that any APA violation automatically gives rise to irreparable harm, and any such conclusion would improperly collapse the four-factor preliminary injunction framework. That is particularly true in this case, where plaintiffs have not advanced any argument in this Court that the Rule violates the statute or other substantive APA principles; they rest instead on only an asserted procedural violation. Even in the constitutional context, the mere "invocation" of a constitutional right "cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016). Rather, that showing may only be made where the impairment of a constitutional right inflicts an immediate and significant real-world injury, as with limitations on the freedom of speech or conscience. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Here, plaintiffs may continue to possess and sell braced firearms so long as they comply with the NFA's modest requirements, so there is no irreparable injury.

Third, in response to the government's observation that the district court did not articulate a theory of economic irreparable harm that supports preliminary relief

running to the commercial plaintiff, Response Br. 16 (citing Dkt. No. 47, at 19-20), the commercial plaintiff points to passages of the district court's opinion related to its standing. But the district court did not thereby find that the commercial plaintiff faced irreparable harm; instead, it found only that that the commercial plaintiff had adduced "sufficient" "allegations" to "plausibly suggest" that it faced economic injury giving rise to Article III standing. Dkt. No. 47, at 20. Even assuming the district court was correct about the commercial plaintiff's standing, those conclusory allegations in no way substantiate a harm so great that a preliminary injunction is appropriate. *See Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990). Where, as here, plaintiffs do not "explain the economic harm in definite enough terms to show the extent of any harm," "quantify, or clearly explain, their generally alleged compliance costs," or "explain how . . . regulations will impact their overall business model in a way that will result in closures," preliminary injunctive relief is inappropriate. *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1018 (8th Cir. 2023).

**B.      The Balance of the Equities Favor Reversal**

**1.** Plaintiffs also fail to explain how plaintiffs' purported injuries outweigh the government's interests in maintaining the Rule. Beyond simply asserting (at 2) that "[t]his case is not about public safety," plaintiffs do not address the government's and the public's interest in ensuring the proper implementation and enforcement of the NFA's statutory controls, which Congress has deemed necessary checks on

20

weapons—like short-barreled rifles—that are particularly dangerous and prone to criminal misuse. Opening Br. 42-43. Likewise, plaintiffs provide no justification for an injunction that would forbid ATF from publicly articulating its current enforcement thinking and interpretive approach to assessing firearms equipped with stabilizing braces. *See id.*; *see also* 88 Fed. Reg. at 6494 (explaining that the agency issued the Rule in response to a letter from the House of Representatives asking it to disclose the non-public "criteria ATF uses to determine whether a firearm is designed and intended to be fired from the shoulder").

**2.** Plaintiffs' assertion (at 18) that the Rule's general "disrupti[on]" nonetheless swings the balance of the equities in their favor is mistaken on all levels. For one, plaintiffs do not provide any substantiation of their view that the Rule is "disruptive," and that view seems to hinge on the (incorrect, *see supra* pp. 3-4) premise that the Rule reflects a sudden reversal of position from the agency. *See* Response. Br. 18.

Regardless, as the Rule explains, the agency's pre-Rule case-by-case approach to classifications had itself generated substantial confusion among the regulated public about ATF's approach to the statute. *See* 88 Fed. Reg. at 6494; Opening Br. 9-10, 42. The Rule thus systematically lays out, for the first time, ATF's general approach to classification of braced firearms to permit the regulated public to better understand ATF's thinking and to ensure that ATF consistently classifies firearms moving forward, an approach that will lead to decreased disruption and confusion.

21

## IV.    The Injunction is Overbroad

**1.** Even if plaintiffs had established the requirements for a preliminary injunction preventing enforcement of the Rule against them, the district court's injunction—which also extends to all past or future customers of the commercial plaintiff within the State of Florida—was impermissible for two independent reasons. First, plaintiffs did not request, and the district court did not provide notice of any intent to enter, an injunction specifically protecting the commercial plaintiff's customers. As a result, the government did not have the opportunity to explain why such an injunction would not be proper, and the injunction failed to comply with Federal Rule of Civil Procedure 65(a)(1)'s fair-notice requirement. *See* Opening Br. 44-45. Second, constitutional and equitable principles require that injunctive relief be limited to redressing plaintiffs' injuries, and the district court's extension of relief to unnamed customers—who are not themselves parties in their own right—contravenes those fundamental principles. *See* Opening Br. 45-46. Thus, at the least, the injunction must be narrowed.

**2.** In response, plaintiffs argue (at 18-19) that the district court's injunction was both procedurally and substantively proper. They are wrong on both points.

As an initial matter, plaintiffs do not refute the point that the government was not on proper notice of the potential scope of the district court's injunction. In attempting to do so, plaintiffs first state—correctly—that they "asked for nationwide relief." Response Br. 19. But that only underscores the government's argument:

22

plaintiffs' motion for a preliminary injunction asked only for nationwide relief, *see* Dkt. No. 21, at 17, and so the government's response explained why such relief would be improper, *see* Dkt. No. 26, at 17-18. The district court properly accepted the government's argument on this score and declined to enter a universal injunction. *See* Dkt. No. 47, at 48-50. And because the only request in plaintiffs' motion was for universal relief—not for relief running specifically to the commercial plaintiff's unnamed customers—the government did not separately address the distinct question whether relief could properly run to customers.

Plaintiffs also briefly state that the government was on notice of their request because the "present and prospective customers" of the commercial plaintiff "were specifically identified and argued for in the alternative to a nationwide injunction." Response Br. 19 (citing Dkt. No. 43). But the cited document—a supplemental reply brief—does not mention the appropriate scope of relief at all. Instead, the cited brief focuses only on whether the commercial plaintiff may bring a Second Amendment claim at all, including whether it has third-party standing to invoke the Second Amendment rights of its customers. *See* Dkt. No. 43. Thus, the government was not on proper notice that plaintiffs might seek, or the court might enter, an injunction reaching the commercial plaintiff's customers.

Plaintiffs' argument defending the scope of the district court's injunction fares no better. Plaintiffs do not generally contest that constitutional and equitable principles require limiting relief to redressing the specific plaintiffs' injuries. And

plaintiffs do not contend that extending relief to all the commercial plaintiff's past and future Florida-based customers is in fact necessary to redress the commercial plaintiff's own injuries. Instead, plaintiffs contend (at 19) that the scope of the district court's injunction was proper because the commercial plaintiff has third-party standing to assert the rights of its customers. But that contention is unavailing.

Even assuming that the district court properly concluded that the commercial plaintiff could, as a matter of third-party standing, assert its customers' Second Amendment rights, *see* Dkt. No. 47, at 18-23, the decision to extend the injunction to those customers was incorrect. For one, the district court did not determine that plaintiffs were likely to succeed on their Second Amendment claim—the only claim on which the court concluded the commercial entity could assert its customers' rights. Thus, the court could not properly enter relief on that claim and could not extend relief to those customers, regardless of how the third-party standing doctrine is understood.

In any event, the third-party standing doctrine does not make the commercial plaintiff's customers into plaintiffs in their own right. Instead, third-party standing permits a plaintiff in narrow circumstances to "rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quotation omitted). At all times, though, the actual plaintiff is pursuing his own "claim to relief," *id.*, which must rest on his own "injury in fact," *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024). The principles described above thus

24

require restricting relief to that necessary to remedy the plaintiff's own injury, not any injuries suffered by nonparties.

That limitation is reinforced by equity. The retailer's customers have not been identified in court or agreed to be bound by any judgment—indeed, nothing suggests that they have given the retailer authority to litigate on their behalf or are even aware of this suit. Tellingly, then, neither the district court nor plaintiffs have explained whether they believe the retailer's customers would be bound by a loss in this case. And either answer to that question results in an untenable outcome. If the retailer asserts the power to bind past and future customers to an adverse judgment, such an assertion would create serious due process problems with respect to customers who have not delegated authority to litigate on their behalf.

By contrast, if the retailer does not believe its customers would be bound by an adverse judgment, then each individual customer's claims may be litigated many times over. Such a result would run headlong into longstanding equitable principles that a party has one opportunity for relief and that the effect of any judgment should be bidirectional. *Cf. Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring) (explaining the equitable and historical problems with "asymmetric" suits). Those concerns are heightened in this context, where different commercial entities have brought suits in many different venues challenging the Rule. To the extent that there is overlap between the collective customers, permitting each retailer to litigate on behalf of all of its customers would allow improper duplication of

25

individual customers' claims. Such a result would improperly provide individual

customers repeated bites at the apple, permitting them to obtain relief if only one

retailer's suit succeeds even if many others' suits fail. That scheme—embraced by

plaintiffs' theory of the injunction—undermines basic principles of preclusion and

perpetuates the unfair asymmetry those precepts seek to guard against.

## CONCLUSION

For the foregoing reasons, the district court's preliminary injunction should be

reversed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

ROGER B. HANDBERG
  *United States Attorney*

ABBY C. WRIGHT
SEAN R. JANDA

  *s/ Ben Lewis*
BEN LEWIS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7250*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2494*

July 2024

26

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6499 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Ben Lewis*
_____
Ben Lewis

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Ben Lewis*
Ben Lewis